Argued September 10, affirmed December 24, 1963

# PARKER *v.* WEYERHAEUSER COMPANY
### 387 P. 2d 982

*William A. Babcock,* Springfield, argued the cause and filed briefs for appellant.

*Richard Bryson,* Eugene, argued the cause for respondent. On the brief were Calkins & Bryson.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

LUSK, J.

This is a personal injury action in which the court granted a judgment of involuntary nonsuit and the plaintiff has appealed.

Plaintiff was employed by the defendant in its logging operations as a timber bucker. He sustained a right inguinal hernia which he claims was caused by the negligence of the defendant in permitting or requiring him to use a power saw, the starting mechanism of which was not operating properly. The saw was started by pulling on a rope in much the same way as a power lawn mower is started. Plaintiff's evidence tended to show that on Friday, February 23, 1962, the day of the alleged injury, the starter slipped almost continuously and that, working as he was on steep ground with bad footing, his body, from the groin on up through the shoulder muscles, was subjected to "terrific strain" when the rope slipped. He testified that at the end of the day he was exhausted and had a "slow burn" in the groin when he got home. He resumed work on the following Monday and continued to work thereafter until February twenty-eighth when he accidentally cut his knee with an ax. He went to see Doctor Paul S. Bassford, who repaired the laceration, after which the plaintiff told the doctor about his experience five days before. Doctor Bassford testified:

"* * * He stated that while working in his occupation, which is logging, he apparently carries and starts a heavy chain saw, and during the course of the day he noted that while packing the saw around he noted some pain and discomfort in the region of his right groin. However, this was not disabling and he worked that day, and he said that evening after work it bothered him more and he examined the area and found it tender, but he did not notice any bulge or any other abnormality. And

then on the following Monday he returned to work and he said the work was relatively light on that day and he got along all right without too much pain or trouble in the region of the groin. However, on the following day he was working in rather heavy snow and apparently the going was pretty rough, and he said he had quite excruciating pain and tenderness in this area and he noted rather a bubbling or gurgling sensation in his right groin. And it was later in that same day that he accidentally cut his knee with an ax that he was brought into my office."

Doctor Bassford diagnosed the condition as an inguinal hernia, which he repaired with surgery. He testified that "at the time of surgery we found a thin wall type of a hernia which we would assume was acute," by which he meant that it had recently occurred. He further testified:

"Q  Now, based on the history that he gave you and the examination that you made, do you have an opinion with respect to the cause of this hernia?

"A  Well, hernias usually are caused by increased abdominal tension and pressure which could have been as a result of the injury as he described it.

"Q  Accepting his history as true, do you have an opinion with respect to the cause?

"A  Well, I have no other opinion.

"Q  Do you have an opinion?

"A  The only opinion I have is that it was caused by lifting or straining of some origin.

"Q  Could it very well have been caused by the type of activity he described?

"A  Very well could have been."

Plaintiff testified that even a saw in perfect condition would slip occasionally, but he had never had one that slipped continually. He further testified:

"Q Have you ever had an experience before where the starter slipped as frequently as it did on this particular day?

"A I don't think so.

"Q Have you ever had any experience before where you had the strain that you had on this day from trying to start the saw?

"A Well, I couldn't actually say because we have strain—in this type of work you have a lot of strain.

"Q No. I am talking about from starting the saw.

"A Well, on this steep ground, naturally, you are going to be puttin' more strain than you will when you are workin' on flat ground."

The trial court found that the evidence was insufficient to show that the plaintiff's injury was caused by the alleged negligence of the defendant in furnishing him with a defective power saw. We think that the ruling was correct. It was Doctor Bassford's opinion that the hernia was caused by lifting or straining of some origin (and this is the common cause of hernia), and that it could have been due to the type of activity described by the plaintiff to the doctor, to wit, carrying and starting a heavy chain saw. The doctor gave no opinion that the strain from starting the saw probably caused the hernia. The plaintiff testified that he was subjected to "terrific strain" when the starter rope slipped, but he also testified that there was "a lot of strain" in the type of work he was engaged in and he did not testify, although his attorney's questions gave him the opportunity to do so, that the strain incident

to starting the saw was of an unusual or unprecedented nature.

The plaintiff's daily work subjected him to physical strain which could have caused the hernia. On the day in question he encountered strain more frequently from the act of starting the power saw than he would have under normal circumstances, but there is no evidence that the strain from that source was any greater than that incident to the plaintiff's customary labors as a timber bucker. It cannot be said with any degree of assurance that the effort expended in starting the power saw was the cause of the hernia rather than that the same unfortunate result would have followed even though there had been no difficulty with the starter. We think that the evidence of causal connection between the defective saw and the plaintiff's injury is too uncertain to afford a basis for a verdict for the plaintiff.

The judgment is affirmed.

Mr. Justice Denecke took no part in the decision of this case.